**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**ROBERT GARRASI,**

                       **Plaintiff,**

  vs.                                           **1:19-CV-370**
                                                       **(MAD/ML)**

**SELENE FINANCE, LP,**

                       **Defendant.**

---

**APPEARANCES:**                                  **OF COUNSEL:**

**ROBERT GARRASI**
P.O. Box 643
Clifton Park, New York 12065
*Pro se* Plaintiff

**MCGLINCHEY STAFFORD**                  **MITRA P. SINGH, ESQ.**
112 West 34th Street, Suite 1515
New York, New York 10120
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On March 6, 2019, *pro se* Plaintiff Robert Garrasi ("Plaintiff") filed a complaint in Troy City Court alleging Defendant Selene Finance, LP ("Defendant") violated the Real Estate Settlements & Procedures Act ("RESPA"), 12 U.S.C. § 2605(k)(1)(D), by failing to respond to requests for information about a mortgage note and mortgage executed by David and Melinda Zebrowski "related to their former residence located at 7 Stablegate Drive, Clifton Park, New York 12065." Dkt. No. 1-1 at 2-7. On March 27, 2019, Defendant removed the action to the Northern District of New York pursuant to 28 U.S.C. § 1441(a) and "properly effected removal

pursuant to 28 U.S.C. § 1446." Dkt. No. 1 at 1-3. Shortly thereafter, on April 26, 2019, Defendant filed a Motion to Dismiss, which is currently before the Court. *See* Dkt. No. 14.

## II. BACKGROUND

On June 29, 2016, David and Melinda Zebrowski assigned their "rights and interests of certain mortgage related promissory notes" "related to 7 Stablegate Drive, Clifton Park, New York 12065" to Plaintiff. Dkt. No. 1-1 at 12-13. Shortly thereafter, on July 11, 2016, Plaintiff sent a letter to Defendant requesting "the identity of the current owner" of the Zebrowski mortgage loan and mortgage, "the date that the owner . . . acquired the mortgage loan and mortgage," and the "contact information for the owner." Dkt. No. 1-1 at 9. Plaintiff identified his correspondence as a Qualified Written Request ("QWR"), and included two letters designated as QWRs from David and Melinda Zebrowski to Defendant, also dated July 11, 2016, and the assignment document. *See* Dkt. No. 1-1 at 9-13. It is unclear whether Plaintiff or the Zebrowskis received a response from Defendant.

On December 18, 2018, Plaintiff emailed Defendant's customer service requesting a "copy of Zebrowski Mortgage Note" and indicated he was authorized to receive this information per an attachment labeled "Zebrowski Assignment of Mortgage Rights." Dkt. No. 1-1 at 15. On December 21, 2018, an agent from Defendant's customer service department replied to Plaintiff's email indicating that Defendant was "unable to provide information regarding the mortgagor's account without obtaining written authorization from the mortgagor." Dkt. No. 1-1 at 17.

On January 25, 2019, Plaintiff sent a letter to Defendant, again identifying it as a QWR, and requesting the same information as he did in July 2016. *See* Dkt. No. 1-1 at 19. Plaintiff included "[a]dditional loan identification" with his letter. Dkt. No. 1-1 at 19-23. On February 20, 2019, Defendant replied, indicating Plaintiff was not "authorized to receive information

2

pertaining to the account[,]" and instructing Plaintiff to "resubmit [his] request along with the attached Third Party Authorization Form, executed by the mortgagors." Dkt. No. 1-1 at 25-26.

Instead of resubmitting his request as instructed, Plaintiff filed a complaint in Troy City Court on March 6, 2019, beginning this civil action. *See* Dkt. No. 1 at 2-6. Defendant then removed the action to the Northern District on March 27, 2019. *See* Dkt. No. 1 at 1-3. On April 18, 2019, Defendant filed a Motion to Dismiss Plaintiff's Complaint. *See* Dkt. No. 14. In its motion, Defendant first argues Plaintiff lacks standing because he "is not a party to the Zebrowski Loan[,]" and therefore "he cannot possibly be damaged by" the alleged RESPA violation. Dkt. No. 14-1 at 5. Defendant also asserts that "Plaintiff's failure to allege actual damages is fatal to his claim and requires dismissal." *Id.* Next, Defendant argues that Plaintiff's complaint "is defective on its face" because the correspondence Plaintiff refers to as QWRs "are not QWRs within the meaning of RESPA." *Id.* at 5-6. Defendant states the documents are not valid QWRs because they "do not request information concerning the 'servicing' of the Zebrowski Loan[,] nor do they contain any information relating to an alleged error." *Id.* at 5-6. Therefore, Defendant concludes that even if Plaintiff had standing, the documents submitted by Plaintiff are "insufficient to trigger any obligation or liability under RESPA[.]" *Id.* at 6. Accordingly, Defendant finds Plaintiff's complaint must be dismissed with prejudice. *Id.* at 11.

In his response, Plaintiff lists seven "[i]ssues to be adjudicated on this FRCP 12(b) motion to dismiss" and asserts he "has suffered actual damages in addition to statutory damages" because he was "compelled to pay legal counsel to issue subpoenas . . . in an attempt to obtain the information that [Defendant] Selene refused to provide as required under the RESPA statute." Dkt. No. 16 at ¶¶ 1-8. Plaintiff attached attorney invoices as evidence of his damages and requested the Court deny Defendant's motion. *See* Dkt. No. 16. The invoices reflect charges

3

from "legal counsel" Plaintiff hired "to issue subpoenas to SunTrust Mortgage, Inc. [("SunTrust")] and the Federal Home Loan Mortgage Corporation ("Freddie Mac") in an attempt to obtain the information that [Defendant] Selene refused to provide . . . as required under the RESPA statute." *Id.* at ¶ 8.

### III. DISCUSSION

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading must include "enough facts to state a claim to relief that is plausible on its face[,]" such that the "[f]actual allegations [are] enough to raise a right of relief above the

4

speculative level[.]" *Twombly*, 550 U.S. at 555, 570 (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Twombly*, 550 U.S. at 558, 570.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). Within the Second Circuit, district courts must make "reasonable allowances" for *pro se* litigants to protect such "litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983); *see Kerven v. United States*, No. 5:18-CV-742, 2019 WL 568963, *2 (N.D.N.Y. Feb. 12, 2019).

**B.     Standing**

Article III of the United States Constitution limits the "judicial Power of the United States," to "Cases" and "Controversies[.]" U.S. Const. art. III, §§ 1, 2. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Id.* The doctrine "ensure[s] that federal courts do not exceed their authority" under Article III, and "limits

5

the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982); *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)). Therefore, standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Kiryas Joel All. v. Village of Kiryas Joel*, 495 Fed. Appx. 183, 188 (2d Cir. 2012).

### *1. Constitutional Standing*

"To demonstrate standing, a plaintiff must have 'alleged a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" *Salazar v. Buono*, 559 U.S. 700, 711 (2010) (quoting *Horne v. Flores*, 557 U.S. 433, 445 (2009)) (emphasis omitted). The "constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an 'injury in fact'–an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)) (other citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 2, 41-42 (1976)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by favorable decision.'" *Id.* (quoting *Simon*, 426 U.S. at 38, 43).

### *2. Prudential Standing*

"In addition to these 'constitutional limitations' on federal court jurisdiction, the standing inquiry also 'involves . . . prudential limitations[.]'" *Zutel v. Wells Fargo Bank, N.A.*, No. 12-CV-

3656, 2014 WL 4700022, *4 (E.D.N.Y. Sept. 22, 2014) (quoting *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 84 (2d Cir. 2014)). "These self-imposed constraints are intended to ensure the proper role of the courts in our tripartite system of government by avoiding judicial resolution of abstract questions that would be more appropriately addressed by other governmental institutions." *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994) (citing *Warth*, 422 U.S. at 500). The Supreme Court has held that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian Coll.*, 454 U.S. at 474 (citing *Warth*, 422 U.S. at 499). Additionally, the Supreme "Court has refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,'" and requires that "the plaintiff's complaint fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Id.* (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970)).

### 3. Standing in a RESPA Action

"RESPA is a consumer protection statute that provides a mechanism for regulating the real estate settlement process," and if "entities or persons responsible for servicing federally regulated mortgage loans . . . 'fail[] to comply with any provision" of RESPA, they "shall be liable to the borrower for each such failure[.]'" *Correa*, 853 F. Supp. 2d at 1207. "Thus, a defendant's liability in a civil action under RESPA is limited to borrowers." *Id.*

### 4. Application

Here, before addressing the potential merits of Plaintiff's claim, the Court must answer the "threshold question" of whether Plaintiff has standing. *Kiryas Joel All.*, 495 Fed. Appx. at 188. Upon review, it is clear that Plaintiff does not have standing to bring a RESPA claim on the

7

Zebrowski mortgage and mortgage note. Plaintiff is "not a borrower or otherwise obligated" on the Zebrowski mortgage and mortgage note and "did not suffer an injury-in-fact." *Johnson v. Ocwen Loan Servicing*, 374 Fed. Appx. 868, 873 (11th Cir. 2010); *see also Correa*, 853 F. Supp. 2d at 1207. The record clearly states that David and Melinda Zebrowski were the borrowers who are named on the mortgage and mortgage note and that Plaintiff was simply assigned their "rights and interests of certain mortgage related promissory notes." Dkt. No. 1-1 at 12-13. Plaintiff is attempting to "rest his claim to relief on the legal rights or interests" of the Zebrowskis, who are not a party in this action. *Valley Forge Christian Coll.*, 454 U.S. at 474 (quoting *Warth*, 422 U.S. at 499). Therefore, even when the Court presumes all of Plaintiff's allegations are true and is lenient in its review of Plaintiff's submissions, it is clear Plaintiff does not have standing to bring this RESPA claim.

In *Johnson*, the Eleventh Circuit held that a plaintiff who acquired her mother's mortgage via a quitclaim deed lacked standing to bring a lawsuit under RESPA because she "was not a borrower or otherwise obligated" by the loan at issue, nor had she shown "that her complaint was within the 'zone of interests' protected by" RESPA. *Johnson*, 374 Fed. Appx. at 871, 874. Although the plaintiff's complaint alleged actual injuries resulting from the loan servicer's conduct, the court found that the plaintiff did not establish an injury-in-fact because "she was not a party to the loan" and "her name was never added to the loan[.]" *Id.* at 873-74. The plaintiff "failed to show that her complaint was within the 'zone of interests' protected by" RESPA because RESPA Section 6 "specifically provides that '[w]hoever fails to comply with any provision of this section shall be liable *to the borrower* for each such failure.'" *Id.* at 874 (emphasis in original). The court concluded that the plaintiff could "prove no set of facts that would entitle her to relief, because she was not a party to the [ ] loan and, therefore, lacked standing to bring any claim

8

based on that loan." *Id.* at 874. Accordingly, the Eleventh Circuit upheld the district court's dismissal of the plaintiff's RESPA claim for lack of both Article III and prudential standing. *Id.* at 874.

Like *Johnson*, Plaintiff is not a party to the mortgage or mortgage note associated with 7 Stablegate Drive and he has not alleged that his name was added to the Zebrowski loan, or that he holds the deed associated with it. Further, Plaintiff has not alleged any relationship to the Zebrowskis, or that he was a party to the Zebrowski loan before assignment.

In *Sharp v. Deutsche Bank Nat. Tr. Co.*, the district court found that although a plaintiff was named as a borrower in the mortgage at issue, he lacked standing to bring a claim under RESPA because he did not sign and is not bound by the promissory note associated with the mortgage. *Sharp v. Deutsche Bank Nat. Tr. Co.*, No. 14-CV-369, 2015 WL 4771291, *6 (D.N.H. Aug. 11, 2015). The court found that "[f]orgoing the protections of [RESPA] is the price a mortgagor pays for avoiding personal liability on a note." *Id.* at *6 n.3. Courts around the country have reached the same conclusion. *See id.*; *see also Singh v. Wells Fargo Bank N.A.*, No. 2:11-CV-0401, 2011 WL 2118889, *4 (E.D. Cal. May 27, 2011); *Wilson v. JPMorgan Chase Bank, N.A.*, No. 2:09-CV-863, 2010 WL 2574032, *9 (E.D. Cal. June 25, 2010).

In the present matter, Plaintiff has not alleged that he was named as a borrower on the mortgage, nor has he claimed to be married to anyone bound by the promissory note associated with the Zebrowski loan. Accordingly, the Court finds that Plaintiff lacks standing to bring a claim under RESPA. *See Sharp*, 2015 WL 4771291, at *6. Based on the forgoing, Plaintiff's RESPA claim must fail as a matter of law.

**C.     Failure to State a Claim**

Although some courts have dismissed RESPA claims, such as the one currently before the Court, based on lack of standing, some courts have found that the issue is more appropriately styled as failing on the merits or, in other words, a lack of a statutory cause of action. *See Keen v. Nelson*, 930 F.3d 799, 802 (6th Cir. 2019).

Section 2605 of the RESPA requires a loan servicer to provide a written response to a borrower's qualified written request. *See* 12 U.S.C. § 2605(e). This section of the RESPA is intended to provide borrowers with greater access to account information. *See* 12 U.S.C. § 2601(a). The request must (1) be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer; (2) include, or otherwise enable the servicer to identify, the name and account of the borrower; and (3) include a statement of the reasons for the borrower's belief, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. *See* 12 U.S.C. § 2605(e)(1)(B).

The qualified written request must be related to "the servicing of [the] loan." 12 U.S.C. § 2605(e)(1)(A)-(B). RESPA defines servicing as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). This requirement "ensures that the statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to services." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (emphasis in original). Although Plaintiff correctly asserts that RESPA has a "broad remedial purpose" and that "[t]here are no 'magic words[]'" that are explicitly required by the statute, the Seventh and Ninth Circuits have clearly stated that under § 2605(e), a loan servicer's duty to

respond is only triggered when (1) a borrower submits a written QWR, and (2) the QWR "requests information related to servicing." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 n.4 (9th Cir. 2012); *see also Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011).

It is axiomatic that to sue someone, you must have a cause of action. It is also well settled that you only have a cause of action under a federal statute if the statute's text provides you one. Unfortunately for Plaintiff, while RESPA creates a cause of action, that cause of action is limited to "borrower[s]." Courts have consistently held that the term "borrower" under RESPA is "someone who is personally obligated under a 'federally related mortgage loan.'" *Keen*, 930 F.3d at 804 (quoting 12 U.S.C. § 2602(1)); *see also Barzelis v. Flagstar Bank, F.S.B.*, 784 F.3d 971, 977 (5th Cir. 2015); *Johnson v. Ocwen Loan Servicing*, 374 Fed. Appx. 868, 874 (11th Cir. 2010). Since Plaintiff was not personally obligated on the mortgage loan, he is not a "borrower" under RESPA.

Moreover, even if Plaintiff was a "borrower" under RESPA, Plaintiff's correspondence to Defendant did not trigger Defendant's obligation to respond because the information sought by Plaintiff was unrelated to the servicing of the loan. While Plaintiff's correspondence was written on the necessary medium and included enough information for the servicer to identify the name and account of the borrower, it still falls short of a valid QWR. Defendant's obligation to respond to a borrower's inquiry under RESPA cannot be triggered when Plaintiff failed to assert an account error or establish any connection between the information sought and the servicing of the loan. Defendant is not required to respond to all inquiries or complaints from borrowers.

Finally, even if Plaintiff was able to establish that the assignment was valid and that Plaintiff assumed the risk of the Zebrowskis' mortgage and mortgage note, RESPA does not apply to "any assumption in which the lender does not have the right expressly to approve a subsequent

11

person as the borrower on an existing federally related mortgage loan." 12 C.F.R. § 1024.5(a) & (b)(5). Here, even assuming that Plaintiff assumed liability under the mortgage loan, he fails to allege that he was approved by the lender to assume that risk. Accordingly, RESPA is not applicable to Plaintiff's assumption of the Zebrowskis' rights and Plaintiff's claim must be dismissed as a matter of law.

Based on the foregoing, the Court finds that Plaintiff has failed to allege a plausible cause of action under RESPA.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's Motion to Dismiss (Dkt. No. 14) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's Complaint (Dkt. No. 1-1) is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

Dated: September 11, 2019
Albany, New York

_Mae A. D'Agostino_
Mae A. D'Agostino
U.S. District Judge